IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| ANA AYALA,<br><br>    Plaintiff,<br><br><br><br>    vs.<br><br><br><br>STATE OF UTAH, DIVISION OF<br>WORKFORCE SERVICES,<br><br>    Defendant. | ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT<br><br><br><br><br>Case No. 1:03-CV-00106 PGC |

Plaintiff Ana Ayala filed a civil rights complaint under Title VII of the Civil Rights Act of 1964,[1] alleging unlawful discrimination, retaliation and illegal employment practices by Utah's Division of Workforce Services.  She first filed a charge of discrimination with the Equal Employment Opportunity Commission alleging that while employed at the Division as an Employment Counselor, she was required to violate Title VII by not referring otherwise qualified clients for job opportunities because they did not speak, and/or read, and/or write English.  She further alleged in her Complaint with the court that the Division discriminated against her because of her national origin, that the Division required her to unlawfully discriminate against

_____

[1]42 U.S.C. § 2000e.

otherwise qualified applicants, and that the Division subjected her to unfair intimidation tactics

creating a hostile work environment.  The Division subsequently filed a motion for summary

judgment on Ms. Ayala's Title VII unlawful discrimination and hostile work environment claims

(#70).  Based on the findings of fact and the case law discussed below, the court GRANTS the

Division's motion for summary judgment (#70).

FINDINGS OF FACT

For the purpose of resolving the Division's motion for summary judgment, the court finds

the following relevant facts to be undisputed.

Ms. Ayala is currently employed by the Division with over nine years of relevant work

experience.  The Division receives job orders from prospective employers and refers unemployed

workers to interview for the jobs listed in the job orders.  Ms. Ayala works as an employment

specialist, tasked with interviewing "customers" seeking jobs, and places these customers with

potential employers in accordance with the job orders on file.  She has received several awards

and recognitions for her work at the Division as an Employment Counselor over the past seven

years.

Ms. Ayala alleges in her Complaint that the Division "has historically discriminated

against both employees and customers of Hispanic/Latino descent, including all related

ethnicities, both American and non-American."[2]  She first brought her Complaint to the attention

of the EEOC.[3]  Her Charge of Discrimination to the EEOC alleged that the Division "historically

---

[2]Complaint at 3.

[3]*Id*. at 3-4 (quoting the EEOC investigation findings).

discriminated against both employees and customers of Hispanic/Latino [descent], including all related ethnicities—both American and non-American. . . . I believe I have been discriminated against because of my national origin, Mexican, in violation of the Civil Rights Act of 1964, as amended."[4]  Under "Cause of Discrimination," she checked only the "National Origin" box, and failed to check the "Retaliation" box.[5]  The crux of her discrimination claim was that the Division routinely included English as a "Bona Fide Occupational Qualification" (BFOQ) on job orders filed by prospective employers.  She claimed that a number of jobs did not require English as a BFOQ, and that the Division's practices encouraged illegally adding the English language requirement to certain job orders in violation of Title VII.  She also included her grievances filed with the Division in her Charge of Discrimination, but did not specifically lay out the particulars of these grievances before the EEOC.  Because the Division allegedly engaged in this illegal policy and Ms. Ayala worked for the Division, she charged that the Division thereby violated her Title VII civil rights as well.

The EEOC issued its determination findings, revealing "that the [Division] posted job orders from employers, which contained language that suggested that successful applicants were required to be able to speak, and/or read, and/or write English.  Evidence showed that many of the posted positions clearly did not require English fluency in order to satisfactorily perform the job duties of the jobs."[6]  The EEOC noted that the Division's actions "had an adverse impact on

---

[4]Defendant's Reply Memo. In Supp. Of Sum. Judg., Ex. BB.

[5]*Id*.

[6]Complaint at 3-4; Plaintiff's Memo. In Opp. Of Sum. Judg., Ex. 3, at 1.

Hispanic and Asian applicants for employment, including those who spoke no English or English within limited proficiency."[7]   Accordingly, the EEOC district director found "reasonable cause to believe that [the Division's] practice of posting job orders from employers, which requires successful applicants to be able to speak . . ., read, . . . and write English violates Title VIII and discriminates against a class of Hispanic clients on the basis of their national origin and a class of Asian clients on the basis of their race."[8]   Finally, the EEOC district director found "reasonable cause to believe that [Ms. Ayala] was discriminated against because of her national origin, Mexican, in that she was required to work in a hostile environment."[9]   The EEOC district director did not discuss any of her other claims of discrimination only mentioned in her grievances, including an allegedly discriminatory Christmas party skit and the Division's use of non-minority male co-worker to test Division work applicants' Spanish skills.

After receiving her right to sue letter from the EEOC, Ms. Ayala filed this Complaint alleging two claims.  She first alleged unlawful discrimination because she had been required by the Division to violate Title VII by not referring otherwise qualified clients for job opportunities because of their English skills.  In her Complaint she alleged that the "EEOC has determined as a result of its investigation of Ms. Ayala's Charge of Discrimination that she has been unlawfully discriminated against."[10]   She also alleged that the Division discriminated and retaliated against

---

[7]Plaintiff's Memo. In Opp. Of Sum. Judg., Ex. 3, at 1.

[8]*Id*.

[9]*Id*. at 1-2.

[10]Complaint at 4.

her because of her national origin, which is Mexican.  Her second cause of action alleged a hostile work environment due to unfair intimidation tactics by the Division, alleged "illegal acts of retaliation" that were "on-going, thereby creating a hostile work environment," and continued discrimination and retaliation because she "had been threatened [] with retaliatory action against her for the mere act of filing and serving this Complaint."[11]  She requested declaratory and injunctive relief against the Division, including punitive damages, although the court subsequently dismissed this claim for punitive damages against a state entity.

<u>STANDARD OF REVIEW</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[12]  In applying this standard, the court must examine the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party.[13]  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to overcome summary judgment]; there must be evidence on which the jury could reasonably find for [the non-moving party]."[14]

<u>DISCUSSION</u>

---

[11]*Id*. at 5.

[12]Fed. R. Civ. P. 56(c).

[13]*See Gaylor v. Does*, 105 F.3d 572, 574 (10th Cir. 1997).

[14]*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

Ms. Ayala has submitted two claims to this court: (1) unlawful discrimination by the Division because it required her to violate Title VII by not referring otherwise qualified clients for job opportunities based on their English skills; and (2) a hostile work environment created by the Division for subjecting her to illegal intimidation tactics, retaliation, and discrimination.  As to the first claim, the Division argues in its motion for summary judgment that Ms. Ayala cannot prove her claim under any theory of Title VII discrimination.  The Division also argues that her second claim: (1) has not been exhausted to the EEOC, (2) the actions taken against her were not "adverse employment actions," (3) the actions taken against her lack the causal connection necessary to support a claim of "retaliation," and (4) the actions taken against her were legitimate, supported, and non-retaliatory.

*A. The Complaint Itself*

Ms. Ayala's Complaint appears to include the "unlawful discrimination" she suffered by being forced to discriminate against non-English speakers with her hostile work environment claim.  Indeed, the EEOC also appears to have amalgamated the two claims, stating that Ms. Ayala "alleged that [the Division] has historically discriminated against both employees and customers of Hispanic/Latino descent, including all related ethnicities, both American and non-American."[15]  It then noted that Ms. Ayala "alleged that she had been discriminated against because of her national origin, Mexican, in violation of Title VII."[16] The EEOC's investigation revealed that the

---

[15]Plaintiff's Memo. In Opp. Of Sum. Judg., Ex.3, at 1.

[16]*Id*.

[Division] posted job orders from employers, which contained language that suggested that successful applicants were required to be able to speak, and/or read, and/or write English.  Evidence showed that many of the posted positions clearly did not require English fluency in order to satisfactorily perform the job duties of the jobs.  This had an adverse impact on Hispanic and Asian applicants for employment, including those who spoke no English or English with limited proficiency.  Evidence also showed that [Ms. Ayala] was required to violated Title VII by not referring otherwise qualified clients for job opportunities because they did not speak, and/or read, and/or write English.  This had the effect of creating a hostile work [environment] for [Ms. Ayala].[17]

At this juncture, an in-depth view of Ms. Ayala's Complaint is in order.  The first cause of action in Ms. Ayala's Complaint states that she was required to violate Title VII, which "had the effect of creating a hostile work environment."[18]  In that same cause of action, she states the Division unlawfully discriminated and retaliated against her because of her national origin.  She then alleges her second cause of action, hostile work environment, alleging unfair intimidation tactics by the Division as retaliation for filing her claim with the EEOC.  She alleges the Division has threatened retaliatory actions for "the mere act of filing and serving this Complaint" and that the illegal acts of retaliation create a hostile work environment.[19]

*B. Claim of Title VII discrimination based on national origin and English requirements*

The court construes Ms. Ayala's first cause of action, "unlawful discrimination" as a claim that her employer required her to violate Title VII and discriminated against her by causing her to violate other persons' civil rights, thereby also constituting a hostile work environment.

---

[17]*Id.*

[18]Complaint at 4.

[19]*Id.*

The court views this claim as a typical Title VII claim of unlawful employment discrimination, which can be proven either through direct evidence, such as a written or oral statement by the defendant of discriminatory motive, or circumstantial evidence.[20]  For Ms. Ayala's claim to survive, she must offer prima facie evidence of the underlying Title VII violation against Division customers in order to claim discrimination.

    1. Direct Evidence

    In terms of "direct evidence" which would include a "oral or written statement on the part of the defendant showing a discriminatory motivation,"[21] Ms. Ayala offers very little.  When asked her reasons for her belief that the job orders as written did not come from the employers, she stated that "the job orders that were written[:] must read and write and speak English, [were] for jobs where that was not necessary[—]they were written incorrectly and illegally."[22]  When asked her reasons in believing that the other Division workers "put that information in the job posting independent of what they were asked to put in the job posting by the employer," she responded that she "had heard through the grapevine that some employees would coach employers to write their job orders a certain way, and I have also been told that some workers also did on their own write a job order to include that if they thought in their mind as employment counselors that the job required someone who need the English language, reading,

_____

[20]*Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1225 (10th Cir. 2000); *see also Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999).

[21]*Kendrick*, 220 F.3d at 1225.

[22]Plaintiff's Memo. In Opp. Of Summ. Judg., Ex.1, at 18.

writing and speaking."[23]

Absent her allegations that she had "heard through the grapevine" and "had been told" that some employees engaged in these actions, Ms. Ayala does not allege that she personally witnessed or engaged in any of these acts. She does state that she had reason to believe that some Division employees were not doing their job, "because the job orders that were written[: ']must read and write and speak English['-] for jobs where that was not necessary[;] they were written incorrectly or illegally."[24] Ms. Ayala also refers to an incident in which one of her Division supervisors, Barbara Vakilian, told her that "Everybody walking in the door must read and write and speak English to get a job referral from" the Division.[25] Unfortunately, although citing to parts of the transcript to controvert statements of material fact asserted by the Division, Ms. Ayala fails to provide certain relevant parts of the transcript that she relies upon to allege such direct evidence.[26] As such, other than statements that she "heard through the grapevine" and the one statement made to her by Ms. Vakilian, Ms. Ayala fails to allege any direct evidence of a oral or written policy of discrimination by the Division. And regarding the job order Ms. Vakilian and Ms. Ayala quarreled over, the company filing the job order with the Division submitted an affidavit stating that English is "a bona fide occupational qualification" for that job.[27]

---

[23]*Id*. at 18-19.

[24]*Id*. at 18.

[25]*Id*. at 16.

[26]Including Ms. Ayala's Deposition Transcript at 15, 41, 44-45, 52-54, 56-58, 61.

[27]Defendant's Memo. In Supp. Of Sum. Judg., Ex. C, at 2.

Ms. Ayala cites to no other statements, provides no written materials regarding a policy from the Division, and cites to only one actual statement made by a Division supervisor in order to allege direct evidence of discrimination. Again, in her deposition, Ms. Ayala is unable to give the name of the "person that told [her] that [Division employees] would add an English language requirement that was not asked for by the employer."[28]  She also states that although she did not know if "there [was] a precise thing that says [Division customers] were [not] given [a] referral because they were limited [in their ability to speak English]," one "could infer that, especially looking at and comparing the job order with the qualifications of the customer."[29]  Given these assertions, without any further material facts or statements, the court finds that Ms. Ayala has failed to show direct material evidence of discrimination against non-English speakers.

2. Circumstantial Evidence

In terms of "circumstantial evidence" of discrimination, this court assesses such evidence through the *McDonnell Douglas Corp. v. Green*[30] framework.[31]  "'In order to survive summary judgment, a plaintiff relying on *McDonnell Douglas* bears an initial burden of establishing a prima facie case intended to eliminate the most common nondiscriminatory reasons that might account for the adverse employment action.'"[32]  "If the plaintiff satisfies the prima facie

---

[28]Plaintiff's Memo. In Opp. Of Summ. Judg., Ex.1, at 23.

[29]*Id*. at 31-32.

[30]411 U.S. 792 (1973).

[31]*Kendrick*, 220 F.3d at 1225.

[32]*Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1283 (10th Cir. 2003) (quoting *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001)).

requirements, the defendant bears the burden of producing a legitimate, nondiscriminatory reason

for its action.  If the defendant does so, the plaintiff must . . . show that [her] race . . . or other

illegal consideration was a determinative factor in the defendant's employment decision, or show

that the defendant's explanation for its action was merely pretext."[33]

Evidence of pretext can include "prior treatment of plaintiff; the employer's policy and

practices regarding minority employment (including statistical data); disturbing procedural

irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria."[34]

Absent the grievances filed as part of this suit, Ms. Ayala provides no further explanation in

detail as to prior treatment.  She does mention that the Division Christmas party, in an off-site

location, discriminated against her national origin.  But she does not provide further details, nor

does she present any other compelling evidence on this issue.  She does allege that the Division

had a non-minority male test Division applicants' Spanish skills, but she does not allege how

such an action adversely affected her employment or created a hostile environment.  Her

overarching offer of circumstantial evidence of discrimination is the 74 job orders themselves,

which she never actually verified or investigated.

In its memorandum, the Division cites to numerous statistics to counter Ms. Ayala's

circumstantial argument regarding its employment referral practices.  Ms. Ayala argues, however,

that the statistics only deal with Hispanic applicants, rather than all minorities.  Ms. Ayala's

Complaint to the court and Charge of Discrimination to the EEOC alleges discrimination against

---

[33]*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

[34]*Id.* (quotations and citations omitted).

her because of her national origin, Mexican, and against customers of "Hispanic/Latino descent, including all related ethnicities."[35]  The applicable definitions of the term "related" includes "connected by reason of an established or discoverable relation," or "connected by common ancestry or sometimes by marriage."[36]  Her discussion of "related ethnicities" includes those that are related to the Hispanic/Latino heritage, which encompasses the statistics provided by the Division.

The Division's statement of statistics is striking because it demonstrates a lack of disparate impact or discrimination by its employment referral policies.  For all the years relevant to the Complaint, from 1998 to 2002, the Division's Ogden branch in particular, and statewide generally, referred more Hispanic applicants to job orders as compared with its general pool of customers.[37]  According to evidence provided to the court, from July 1, 2000, until June 30, 2005, the Division processed 310,033 job orders.[38]  Ms. Ayala, however, offers only 74 allegedly discriminatory job orders, none of which she verified or investigated, and almost half of which the Division has offered counter affidavits from the employers themselves.  Indeed, it is striking to the court that for each year from 1998 to 2002, both the Ogden-based and statewide Hispanic applicants received a higher average of job referrals from the Division as compared with the total

---

[35]Complaint at 3.

[36]MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, at 1050 (11th ed. 2003).

[37]*See* Defendant's Memo. In Supp. Of Sum. Judg., at 7-11 and Ex. D.

[38]*Id*.

pool of applicants.[39]  Ms. Ayala fails to provide any further evidence that rebuts the claims made

by the Division in terms of disparate impact, and her claim that relies on such a disparate impact

fails absent any proffered evidence to the contrary.  And her offering 74 job orders as "evidence"

of discriminatory practices, out of over 310,000 job orders over the past five years, is not

compelling, especially as she offers nothing but her own word that these job orders are

discriminatory.

Ms. Ayala argues that "proof of discrimination is critical" and that it can be "inferred

from the mere fact of differences in treatment."[40]  Indeed, by her own admission, she must show

that "discrimination was the [Division]'s standard operating procedure—the regular rather than

the unusual practice."[41]  She presents 74 job orders to the court, all which allegedly require

English for a valid job referral from the Division.  She then states that in her experience, English

is not a BFOQ for any of them.  The Division has subsequently provided a number of affidavits

from many of the employers that filed these job orders, each one stating and explaining why

English was a BFOQ when they submitted the job orders.[42]  Ms. Ayala admits that she has no

personal knowledge of any job order where a Division employee improperly added an English

---

[39]*Id*.

[40]Plaintiff's Memo. In Opp. Of Summ. Judg., at 10 (citing *Int'l Bd. Of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977)).

[41]*Int'l Bd. of Teamsters*, 431 U.S. at 336.

[42]Defendant's Reply Memo. In Supp. Of Sum. Judg., Ex. AA.

requirement.[43]  She acknowledges that she never called any of the employers who submitted the

74 allegedly discriminatory job orders to investigate whether English was a BFOQ.[44]  And she

concedes that she never kept records as to whether she referred any non-English speakers for any

of these job orders.[45]  Baring Ms. Ayala's base statements that she could "tell just by looking at

the job order if English is a bona fide occupational qualification,"[46] she fails to provide any

material direct or circumstantial evidence to show that the Division violated Title VII by falsely

requiring English as a BFOQ on these 74 job orders, and thereby violated her Title VII rights by

causing her to engage in illegal employment practices.

     In fact, a majority of Ms. Ayala's statements in her deposition testimony are starkly

lacking on the issue of direct or circumstantial evidence of discrimination.  For instance, when

asked to describe the Division's discriminatory practices, Ms. Ayala replied:

> Ms. Ayala: That [the Division] didn't follow their BFOQ policy, plain and simple.  And the rest is on record.
>
> Counsel: And describe the specific facts that you refer to form your statement that they did not follow their policy?
>
> Ms. Ayala: As I said, the rest is on record and it would be redundant for me to repeat it. . . .

---

[43]Defendant's Memo. In Supp. Of Sum. Judg., Ex. A at 26 (Ms. Ayala's Deposition Transcript).

[44]*Id*. at 38-39; 47 ("Counsel: Have you undertaken any efforts to make a determination as to whether or not English for the job orders that you submitted [to the EEOC] for the ones that you complain were illegal, to make a determination if in fact the employer had a good reason for this?  Ms. Ayala: No. Why would I? . . . I figured I'd leave it up to the EEOC.").

[45]*Id*. at 29, 51.

[46]*Id*. at 46.

Well, it's all part of the lawsuit, isn't it?  They wrote discriminatory job orders.  They didn't follow their policy.

Counsel: Any other facts?

Ms. Ayala: That's it.
. . .

Counsel: Do you have any basis in fact that discriminatory job orders that were written were part of a practice at the [Division]?

Ms. Ayala: Of course.  It was history.  All you have to do is look at the history of the way the job orders were written, and it's there.  It tells you.

Counsel: Okay.  Can you be specific as to what you mean by history of the way the job orders were—

Ms. Ayala: History, it means that they've always done it.
. . .
And I told you the [Division] has a history of doing this.  All you would have to do is go back and look at the systems that were used from decades ago, and they have always written discriminatory job orders.
. . .

Counsel: Okay.  So aside from the statements that you've made, do you have any specific facts that show that there is a discriminatory practice that's system wide at [the Division] separate and apart from job order themselves?

Ms. Ayala: Well, Mr. Attorney General, the EEOC found the job orders were written discriminatorily was enough for them to find that [the Division] discriminated against certain individuals.  I don't know what's enough for you, but that's all I've got to give you.
. . .

Counsel: My question was, do you have any specific facts aside from the job orders themselves, or is it just the job orders?

Ms. Ayala: I just answered that.
. . .
[You've] got the evidence.
. . .
The job orders and the people who write them, because the job orders don't write

themselves.

Counsel: Okay.  Do you have any specific facts regarding the people who wrote the job orders showing that the practice was discriminatory system[-]wide as opposed to a mistake job order that was written?

Ms. Ayala: You can't have one without the other.  The job orders cannot be written without people writing them.  The people are the one who broke the policy. . .[47]

Absent printing these 74 job orders, and alleging that the job orders were discriminatory, the court finds that Ms. Ayala fails to provide any material evidence of direct or circumstantial evidence of discrimination.  Indeed, when the issue of English ability in a job order came up, Ms. Ayala acknowledges that she could "always call [the employer, as she and other Division employees] were told [they] could call an employer" to verify the English requirement in the job order.[48]  Granted, "the business services team [at the Division] did not like that,"[49] but Ms. Ayala was not precluded from directly contacting the employers.  And it is clear from the record submitted that Ms. Ayala never discussed these, or any other alleged discriminatory job orders, with employers.  It is also clear that absent these allegations of discriminatory job orders, Ms. Ayala provides no further proof of discrimination, either with written orders from the Division, or from any statements actually made by supervisors at the Division, except for the one remark allegedly made by Ms. Vakilian.  The court finds that this lone alleged comment by Ms. Vakilian, against the sea of circumstantial evidence provided by the Division that directly contradicts Ms. Ayala's allegations and statements, is not enough to present direct evidence of

---

[47]Plaintiff's Memo. In Opp. Of Summ. Judg., Ex.4.

[48]*Id*. at 38.

[49]*Id*.

discrimination by the Division.  And Ms. Ayala fails to rebut the Division's circumstantial evidence as well.

The court finds that Ms. Ayala has failed to present prima facie evidence of a pattern of discrimination against non-English speakers by the Division.  Although she argues that Division gives no legitimate, justifiable reason for the pattern and practice of discrimination, the court finds that Ms. Ayala's failure to provide any material evidence of such pattern or practice is fatal to her "unlawful discrimination" claim.  Evidence of 74 job orders that Ms. Ayala alleges violates discrimination laws, absent any further proof, and offered in the face of affidavits *from a majority of those employers* stating that these jobs required English, is insufficient to establish a prima facie case of discrimination.  Since Ms. Ayala failed to investigate these specific job orders, even though she could have done so, her base allegations alone, along with one alleged comment by her supervisor, in seven years of employment, cannot possibly establish a prima facie case of discrimination.

Even if she had shown prima facie evidence of a pattern of discrimination, the court finds that the Division has sufficiently rebutted the presumption of discrimination by its statistics and the lack of any actual written or spoken policies favoring discriminatory practices.  Ms. Ayala's assertions that "the Division has a history of" discrimination, and that the specific facts are "on the record" does not show that race "was a determinative factor in the [Division's] employment decision[s], or show that the [Division's] explanation for its action was merely pretext."[50]

---

[50]*Garrett*, 305 F.3d at 1216 (citing *Kendrick*, 220 F.3d at 1226).

*C. Hostile Work Environment Claim Due to Intimidation and Retaliation*

Ms. Ayala's second cause of action, "hostile work environment," solely discusses retaliatory and intimidation tactics against her for filing her grievances and EEOC Charge of Discrimination.  The court therefore construes Ms. Ayala's second claim, a "hostile work environment," as a claim that the Division engaged in intimidation tactics and retaliation for her filing of the Charge of Discrimination with the EEOC.  The Division argues that the four acts of retaliation identified in her Complaint do not constitute retaliation, that some were not adverse employment actions, and that others lack a causal connection to her filing the EEOC Charge of Discrimination.  The Division also argues that Ms. Ayala failed to exhaust her administrative remedies for her underlying retaliation and intimidation claims.[51]

First, it is unclear to the court whether Ms. Ayala has actually exhausted her administrative remedies in relation to her intimidation and retaliation claims.  Her Complaint alleges intimidation and retaliation only related to her EEOC Charge of Discrimination and her filing in this court.  She never offered a retaliation claim to the EEOC, nor does she specifically allege that the retaliation claim constitutes a continuing violation reasonably related to her previous allegations.  To that end, the Division argues that under *Nat'l R.R. Passenger Corp. v. Morgan*,[52] the retaliation claim constitutes a separate and discrete action, and administrative remedies must be exhausted before it can be brought before this court.[53]

---

[51]*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974).

[52]536 U.S. 101 (2002).

[53]*Id*. at 110-114.

Ms. Ayala now argues that the Division engaged in on-going discrimination violations, including certain retaliatory practices after the filing of her EEOC Charge of Discrimination and her Complaint.  As the Supreme Court has held, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"[54] It is true, however, that "[h]ostile work environment claims are different in kind from discrete acts."[55]  Ms. Ayala's retaliation claims are brought under her "hostile work environment" claim, as she alleges that the intimidation and retaliation created such an environment.  These claims appear to be currently pending before the EEOC according to her counsel's oral argument, but they also might constitute continuing violations stemming out of the original complaint.  The Tenth Circuit's ruling in *Martinez v. Potter*[56] makes it unclear whether the continuing violation exception still exists to allege a claim of retaliation.  Since the court finds that Ms. Ayala's substantive hostile work environment claims relating to intimidation and retaliation fail as a matter of law, the court declines to review whether she has also failed to exhaust her administrative remedies for this issue.

In "determining whether an actionable hostile work environment claim exists, [the court must] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

---

[54]*Id*. at 115.

[55]*Id*.

[56]347 F.3d 1208, 1210 (10th Cir. 2003).

whether it unreasonably interferes with an employee's work performance."[57]  Ms. Ayala must

show "under the totality of circumstances that (1) the harassment [she suffered] was pervasive or

severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment

was racial or stemmed from [national origin] animus."[58]  And "a few isolated incidents of racial

enmity are insufficient to survive summary judgment."[59]

Specifically, Ms. Ayala testifies that she suffered retaliation for filing her EEOC

complaint by not being allowed to have a representative present during an in-house

investigation,[60] by the Division punishing her for a training incident,[61] and by the Division

punishing her for allegedly requesting illegitimate information on her son.[62]  She complains that

these acts of intimidation and retaliation created a hostile work environment.  She also claims

that the Division retaliated against her by giving her negative performance evaluations and

awarding her the lowest amount of a bonus shared by her team.[63]  And she also claims that a

Division Christmas Party subjected her to discrimination and a hostile work environment, but

Ms. Ayala does not allege that his action was retaliatory in any way.  Finally, in her response to

---

[57]*Id*. at 116 (quoting *Harris v. Forklift Sys.*, 510 U.S. 21, 23 (1993).

[58]*Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quotation omitted).

[59]*Id*. (citing *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).

[60]Plaintiff's Memo. In Opp. Of Summ. Judg., Ex.1, at 70-71, 74-76.

[61]*Id*. at 72, 101-102, 147.

[62]*Id*. at 72, 114-115.

[63]*Id*. at 72.

the Division's summary judgment motion, Ms. Ayala also claims that the Division retaliated

against her by failing to promote her, even though she was "qualified" for the position.

To establish a prima facie Title VII retaliation claim, Ms. Ayala must demonstrate that

she engaged in protected opposition to Title VII discrimination, she suffered an adverse

employment action, and that there is a causal connection between the protected activity and the

adverse employment action.[64]  She must show that the adverse employment action changed her

employment status,[65] and the action must amount to a "significant change in employment status,

such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or . . . causing a significant change in benefits."[66]  Of course, the court may

consider "adverse employment actions" as acts that carry a "significant risk of humiliation,

damage to reputation, and a concomitant harm to future employment prospects."[67]  And Ms.

Ayala may establish a causal connection by offering "'evidence of circumstances that justify an

inference of retaliatory motive, such as protected conduct *closely followed* by adverse action.'"[68]

Ms. Ayala points to five incidents, occurring over the course of five years, as adverse

employment actions.  First, the court finds that Ms. Ayala's "successful" in-house evaluations are

---

[64]*Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1229 (10th Cir. 2004).

[65]*Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998).

[66]*Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998); *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1237-38 (10th Cir. 2004).

[67]*Annett*, 371 F.3d at 1239 (quotation omitted).

[68]*Id.* (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999)) (emphasis added).

not "adverse employment actions" as defined by the case law.  Ms Ayala has failed to allege that

these "successful" evaluations cause a "significant change in employment status, such as hiring,

firing, failing to promote, reassignment with significantly different responsibilities, or . . .

causing a significant change in benefits."[69]  Nor has she offered any evidence that these

evaluations carry a "significant risk of humiliation, damage to reputation, and a concomitant

harm to future employment prospects."[70]  Ms. Ayala has also not offered any proof, other than

her own affidavit, that she received the lowest amount of bonus on a particular project.  The court

finds that Ms. Ayala's "successful" evaluation and allegations of a one-time low bonus, absent

any other evidence, are not sufficient "adverse employment actions" to constitute a prima facie

case of retaliation.

      Ms. Ayala also claims that the Division retaliated against her for bringing her grievance

and subsequent Charge of Discrimination during its in-house investigation phase.  She claims

that the Division did not allow her to have her own representative during its investigation

interview.  Specifically, Ms. Ayala filed a grievance with the Division, complaining about the

Division Christmas Party, the incident with Barbara Vakilian, and an incident in which a non-

minority male was tasked with testing Spanish fluency of Division job applicants.[71]  In that

grievance, Ms. Ayala charges three people, plus the Division, with discrimination, and

complained of a hostile work environment.  It is clear, however, that Ms. Ayala was not filing a

---

[69]*Burlington Indus.*, 524 U.S. at 761.

[70]*Annett*, 371 F.3d at 1239 (quotation omitted).

[71]Plaintiff's Memo. In Opp. Of Sum. Judg., Ex.5, at 1-5.

grievance resulting from dismissal, demotion, suspension, written reprimand, reduction in force, or a dispute concerning abandonment of position.[72]  And it is clear that the Division was not undertaking any disciplinary action against Ms. Ayala in conducting the investigation of the grievance that she personally lodged against the Division.  As such, Ms. Ayala's citation to Utah Division Policy R477-11-1(2) is inapplicable, because the Division was not taking any disciplinary action against her at that time.  And the grievance process that Ms. Ayala had filed was not in regards to any punishment or adverse employment action, but rather so the Division could investigate her own filed complaints.  The Division investigator offered numerous concessions to accommodate Ms. Ayala during the internal complaint process, including a neutral site, written questions, a witness to be brought during the investigation, and vouched that she had no authority of Ms. Ayala whatsoever.[73]  It is clear that the Division attempted to accommodate Ms. Ayala during the grievance process, and Ms. Ayala fails to provide any material evidence of retaliation during such investigation.  Accordingly, the court finds that Ms. Ayala's claim of retaliation by the Division during the in-house investigation was not an "adverse employment action" and also has no causal connection between any perceived action and Ms. Ayala's Charge of Discrimination or her Complaint.

　　　　Ms. Ayala also claims that the Division's Letter of Reprimand and the Letter of Discipline issued by the Division constitute retaliation for filing her EEOC Charge of

---

[72]*See* UT Code Ann. § 67-19a-406(2)(a).

[73]Defendant's Memo. In Supp. Of Sum. Judg., Ex. E at 2-11 (JoAnn Vanos Declaration and Attachments).

Discrimination and her Complaint.  The court finds that both letters constitute "adverse employment actions" taken by the Division.  The Letter of Reprimand carries a significant risk of humiliation, damage to reputation, and possibly affects her subsequent assignments.  The Letter of Discipline actually resulted in a forced leave of absence by Ms. Ayala for three days, thereby decreasing her pay.  The Division argues, however, that a causal connection does not exist between these two letters and Ms. Ayala's EEOC complaint or this suit.

Both of these letters, one issued in January 2003 and one issued in August of 2003, came at least 18 months after Ms. Ayala filed the Charge of Discrimination with the EEOC.  She filed her Charge of Discrimination with the EEOC on July 16, 2001, eighteen months before the Division's Letter of Reprimand and twenty-five months before the Division's Letter of Discipline.  And since Ms. Ayala filed her Complaint with the court on September 22, 2003, she cannot possibly claim that the Division retaliated against her for filing this suit, unless the Division had prescient foresight.  "Unless the [adverse action] is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation."[74]  At least 18 months had passed since the filing of the EEOC Charge of Discrimination and the first letter issued by the Division.  If a "three-month period, standing alone, is insufficient," then Ms. Ayala's 18 months, standing alone, is insufficient to show a causal connection that constitutes retaliation.[75]

---

[74]*Meiners*, 359 F.3d at 1231 (quotation omitted).

[75]*See, e.g.*, *Meiners*, 359 F.3d at 1231; *see also Clark County Sch. Dist. V. Breeden*, 532 U.S. 268, 273-74 (2001); *Medina v. Income Support Div.*, 413 F.3d 1131, 1136 (10th Cir. 2005); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).

Looking at the substance of the Letters of Reprimand and Discipline, the court also finds that the Division has offered legitimate, non-discriminatory reasons for both of these letters.  In regards to the Letter of Reprimand, the Division certainly has the right to discipline its employees for unprofessional conduct.[76]  Ms. Ayala became "livid" at the trainer in the mandatory training session, admits that she threatened the trainer with legal action, and admits that she acted unprofessionally.[77]  The Division received Ms. Ayala's response to the entire incident, considered it, and issued its letter stating that Ms. Ayala acted unprofessionally.[78]  Ms. Ayala received no further discipline from that incident, and it is clear to the court that it was not pretext that the Division found that Ms. Ayala acted unprofessionally at the training incident. Ms. Ayala might argue that she was punished for the substance of her comments, but the record also reflects that the Division issued the Letter of Reprimand for her unprofessional actions during the training session, rather than for the substance of her comments.  As such, the court finds that the Division has rebutted Ms. Ayala's prima facie evidence of retaliation, and that Ms. Ayala proffers no further evidence that the Division's reasons are pretextual, or not legitimate and justified.

With regard to the Letter of Discipline, Ms. Ayala's own testimony admits that she "may have said something about [her son] not understanding the [benefits program]."[79]  She also

---

[76]*See, e.g., Trujillo*, 157 F.3d at 1214; *Rollins v. State of Florida Dep't of Law Enforcement*, 868 F.2d 397, 401 (11th Cir. 1989).

[77]Defendant's Memo. In Supp. Of Sum. Judg., Ex. A at 92-93, 95, 96-97, 102 (Ms. Ayala's Deposition Transcript).

[78]*Id*.at Ex. G.

[79]*Id*. at Ex. A at 116 (Ms. Ayala's Deposition Transcript).

admits that she asked her co-worker for information concerning the general assistance program

her son was applying to.[80]  And she also admits that the co-worker pulled up her son's

information on the computer when Ms. Ayala was talking to that co-worker about her son and the

program.[81]  Finally, the co-worker indicated that Ms. Ayala asked her to look up the information

on her computer,[82] and Ms. Ayala admits that the co-worker might have "inferred" from her

questions that she was specifically asking about her own son.[83]

Based on the admissions on the record, it is clear that an incident arose in which Ms.

Ayala conceivably violated Division policy by requesting information on her son.  Ms. Ayala

argues that, because the co-worker was not punished, the Division retaliated solely against her

and must have punished her for filing the EEOC Charge of Discrimination.  Given the

declarations on the record and Ms. Ayala's own deposition testimony, however, it is clear that the

Division was within its discretion to investigate the matter and make a decision.  The link

between Ms. Ayala's EEOC Charge of Discrimination filed over two years previously, and the

Letter of Discipline, appears tenuous at best.  And Ms. Ayala's own admissions are enough for

the court to find that the Letter of Discipline lacks a causal connection to the EEOC Charge of

Discrimination.  The employer action may be considered pretextual only if so "inconsistent,

---

[80]*Id*. at 114.

[81]*Id*. at 114-15.

[82]*Id*. at Ex. G.

[83]*Id*. at Ex. A at 117-118 (Ms. Ayala's Deposition Transcript).

implausible, incoherent and contradictory that it is unworthy of belief,"[84] and that does not appear to be the case before the court.  As such, the court finds that Ms. Ayala has failed to show the causal connection between the Letter of Discipline and her EEOC Charge of Discrimination. The court also finds that Ms. Ayala has failed to rebut the Division's legitimate, non-discriminatory reason for taking adverse employment actions against her.

Finally, Ms. Ayala alleges that she did not receive a promotion less than a month ago, and seeks to have this issue included in her suit against the Division.  First, Ms. Ayala has failed to bring this in an Amended Complaint, nor does it appear that she has exhausted her administrative remedies as to this issue.  Second, her allegations, offered in her opposition memorandum, do not provide clear evidence of discrimination.  She offers an affidavit, a description of the job, her application, and two emails, to show that "this action of . . . denying [her] a promotion in favor of less qualified applicants is [b]latant discrimination."[85]  She further states that this is the "second time" this has happened, the first time allegedly occurred in April 2003.  But Ms. Ayala did not include any of this information anywhere in her Complaint, nor does it appear to have been brought to the attention of the EEOC.[86]  Based on the proffered information, Ms. Ayala has not shown that she was the most qualified candidate, especially given that she was informed by the Division that her job presentation was not as good as the other interviewees.[87]  Ms. Ayala fails to

---

[84]*Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004).

[85]Plaintiff's Memo. In Opp. Of Sum. Judg., Ex.8, at 2.

[86]*See* Complaint.

[87]Plaintiff's Memo. In Opp. Of Sum. Judg., Ex.8, at 2.

show that the Division's reasons for not giving her the "Lead Worker" position were either pretextual, or not legitimate and non-discriminatory.  And the court believes that Ms. Ayala has also failed to exhaust her administrative remedies on the issue of these alleged retaliatory non-promotions.

The court declines to entertain these arguments further, absent any other proof or evidence of non-legitimate, discriminatory motive on behalf of the Division to fail to promote Ms. Ayala.  Ms. Ayala may have a legitimate claim regarding such discrimination, but her failure to exhaust her administrative remedies by bringing it to the EEOC, is fatal at this juncture.  If Ms. Ayala does exhaust her administrative remedies, however, such a claim might be entertained by the court, so any dismissal as to this particular portion of her case should be done without prejudice.

CONCLUSION

The court finds that Ms. Ayala has failed to offer either direct or circumstantial evidence of discrimination by the Division to carry her prima facie burden on the "unlawful discrimination" claim.  On her retaliation claims, the court finds that Ms. Ayala has failed to show that some of the Division's actions were "adverse employment actions," and has failed to show that other remaining actions had a causal connection to the EEOC Charge of Discrimination.  And the court finds that Ms. Ayala's failure to promote claims have not been administratively exhausted, so this claim will be dismissed without prejudice.

Given the above findings and based on the case law of this Circuit, the court GRANTS

the Division's motion for summary judgment (#70).  The Clerk's Office is directed to close the

case.

DATED this 10th day of February, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge